## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JENNIFER L. HENNEBAUL,** | : | **Civil No.  1:21-CV-2163** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **KILOLO KIJAKAZI**, | : | |
| **Acting Commissioner of Social Security** | : | |
| | : | |
| **Defendant** | : | |

## MEMORANDUM OPINION

### I.    Introduction

The Supreme Court has underscored for us the limited scope of our

substantive review when considering Social Security appeals, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S. Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S. Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S. Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L.Ed.2d 143 (1999)

1

(comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

Jennifer Hennebaul applied for disability and disability insurance benefit, as well as supplemental security income under Titles II and XVI of the Social Security Act on September 4, 2019, alleging an onset date of disability of July 25, 2019. A hearing was held before an Administrative Law Judge ("ALJ"), and the ALJ found that Hennebaul was not disabled during the relevant period and denied Hennebaul's application for benefits. Hennebaul now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence.

However, after a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Biestek, 139 S. Ct. at 1154, we find that substantial evidence supported the ALJ's findings in this case. Therefore, for the reasons set forth below, we will affirm the decision of the Commissioner.

## II.     **Statement of Facts and of the Case**

Hennebaul filed her claim for supplemental security income on September 4, 2019, alleging an onset date of July 25, 2019. (Tr. 12). Hennebaul alleged disability due to multiple sclerosis, anxiety, and thyroid issues. (Tr. 76). She was 42 years old

2

at the alleged onset of disability, had a high school education, and had past relevant work experience as a tow truck dispatcher. (Tr. 26, 76, 80).

With respect to Hennebaul's impairments,[1] the medical record revealed the following: Hennebaul had a history of multiple sclerosis ("MS"), anxiety, and depression. (Tr. 383-86). A progress note from September 3, 2019, indicated that Hennebaul wanted to start medications, and that her mood had been poor and she was feeling depressed and anxious. (Tr. 384). It was also noted that Hennebaul reported memory and concentration problems. (Id.)  Hennebaul had an MRI of her spine in February of 2019 that showed three new lesions. (Id.) At this visit, Hennebaul started medication both for her MS and for her anxiety and depression. (Tr. 387).

On examination in November 2019, Hennebaul was alert and oriented, had fluent speech and no focal motor/sensory deficits, and she reported no depression or anxiety. (Tr. 556). Hennebaul underwent a mental status evaluation with Krista Coons, Psy.D. in November of 2019. (Tr. 501-05). Hennebaul reported depression and irritability that stemmed from not being able to do things because of her MS. (Tr. 502). She also reported anxiety and difficulty concentrating. (Id.) On

---

[1] Because Hennebaul's challenge on appeal solely relates to her limitations in concentrating, persisting and maintaining pace, our analysis will focus on the medical records relating to those limitations.

examination, Dr. Coons noted that Hennebaul had coherent and goal directed thought processes; her attention and concentration, as well as her recent and remote memory skills, were mildly impaired due to her MS; and she had a depressed affect. (Tr. 503-04). Hennebaul reported being able to dress, bathe, and groom herself, as well as perform household chores such as cooking and cleaning. (Tr. 504). Dr. Coons diagnosed Hennebaul with major depressive disorder, single episode, moderate with anxious distress, and recommended that Hennebaul continue to take her psychiatric medications. (Id.)

In December of 2019, Dr. Richard Small, Ph.D., a state agency consultant, review the record and opined that Hennebaul had moderate limitations in interacting with others and adapting or managing oneself; no limitations in understanding, remembering, or applying information; and mild limitations in concentrating, persisting, or maintaining pace. (Tr. 81). Dr. Small noted that at her consultative examination, Hennebaul's attention and memory were mildly impaired. (Id.) Dr. Small opined that Hennebaul was able to perform simple, routine tasks on a sustained basis despite her limitations. (Tr. 86).

In February of 2020, Hennebaul presented to Neurology at Danville for an MS follow up. (Tr. 525). Most of Hennebaul's complaints related to her physical ability to do things and her fatigue. (Tr. 526). It was noted that she complained of

4

short-term memory complaints, but a mental status examination revealed that Hennebaul was alert and oriented, and had normal memory, attention span, concentration, language, and fund of knowledge. (Tr. 526, 529). In March, an examination was similarly unremarkable, noting that Hennebaul was alert and oriented with fluent speech and no focal motor/sensory deficits. (Tr. 524).

In June of 2020, Dr. Paul Taren, Ph.D., a state agency consultant, reviewed the record and similarly opined that Hennebaul had only mild limitations in concentration, persistence, and pace. (Tr. 108). Dr. Taren noted that Hennebaul's functional limitations were primarily due to her physical condition, and that she exhibited only mild attention and memory deficits. (Id.) Dr. Taren found Hennebaul's statements to be only partially consistent with the evidence of record, and that she was able to perform the demands of simple, routine tasks. (Tr. 113).

At an appointment in August of 2020, Hennebaul reported that her anxiety had worsened, and that she was experiencing much fatigue which was frustrating to her but reported no feelings of depressed mood. (Tr. 636-37). On examination, she was alert and oriented with no focal deficits present, and her mood was normal, although it was noted that she was tearful when describing how the fatigue is affecting her life. (Tr. 637-38). At a visit with Dr. Muhammad Malik, M.D. in August, Hennebaul reported that she was experiencing word finding deficits and

some memory issues. (Tr. 628). Dr. Malik opined in January of 2021 in a check box form that Hennebaul's impairments frequently interfered with her ability to attend to tasks or concentrate. (Tr. 715).

It is against this medical backdrop that the ALJ held a telephonic hearing on Hennebaul's claim on January 13, 2021. (Tr. 33-58). At the hearing, both Hennebaul and a Vocational Expert testified. (Id.) By a decision dated March 18, 2021, the ALJ denied Hennebaul's application for benefits. (Tr. 12-28).

In that decision, the ALJ first concluded that Hennebaul met the insured status requirements under the Act and had not engaged in any substantial gainful activity since her alleged onset date of July 25, 2019. (Tr. 15). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Hennebaul had the following severe impairments: multiple sclerosis ("MS"); degenerative disc and joint disease of the cervical, thoracic, and lumbar spine; right knee degenerative joint disease; left foot calcaneal spurs; generalized anxiety disorder; panic disorder; and major depressive disorder. (Id.) At Step 3, the ALJ determined that Hennebaul did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 18-21). On this score, the ALJ found that Hennebaul had a mild limitation in concentrating, persisting, or maintaining pace. (Tr. 20). Specifically, the ALJ noted that Hennebaul alleged

difficulty paying attention and finishing what she starts. (Id.) However, the ALJ further noted that the medical evidence did not document any serious clinical abnormalities in attention or concentration, and that Hennebaul's activities of daily living did not support more than a mild limitation in this area. (Id.)

Between Steps 3 and 4, the ALJ fashioned a residual functional capacity ("RFC"), considering Hennebaul's limitations from her impairments:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant: could lift and carry up to 10 pounds; could sit for up to 6 hours and stand/walk for up to 2 hours in an 8-hour workday; could occasionally use her bilateral lower extremities for pushing and pulling; could occasionally climb stairs and ramps, but must avoid climbing on ladders, ropes, and scaffolds; could occasionally stoop, kneel, crouch, or crawl; must avoid overhead reaching with the bilateral upper extremities; must avoid exposure to concentrated levels of temperature extremes, humidity, vibrations, and hazards (defined as heights and moving machinery); is limited to performing unskilled work activity as outlined in the Dictionary of Occupational Titles (DOT), i.e., work that is low stress with only occasional decision making and only occasional changes in the work setting; and could have no interaction with the public.

(Tr. 21).

Specifically, in making the RFC determination, the ALJ considered the medical evidence, medical opinions, and Hennebaul' testimony regarding her impairments. On this score, the ALJ found the opinion of Dr. Coons persuasive, in that her examination supported the claimant's allegations regarding the existence of

issues with her ability to focus and concentrate, although these issues were mild in degree. (Tr. 24). The ALJ also found Dr. Malik's January 2021 opinion generally somewhat persuasive, in that it corroborated the existence of Hennebaul's concentration difficulties. (Tr. 24-25). However, the ALJ noted that this opinion regarding Hennebaul's ability to concentrate was vague because it did not include a degree or indication as to the severity of Hennebaul's concentration deficits. (Id.)

The ALJ also considered the opinions of the state agency consultants, Dr. Small and Dr. Taren, and found these opinions persuasive. (Tr. 25). The ALJ reasoned that these opinions limiting Hennebaul to simple, low stress work was consistent with the medical evidence that showed only a mild limitation in concentration, persistence, and pace. (Id.)

The ALJ also considered Hennebaul's testimony but ultimately found that Hennebaul's complaints were not entirely consistent with the medical evidence of record. (Tr. 22). Hennebaul testified that she took care of her personal care, such as bathing, grooming, and dressing, and that she did some household chores. (Tr. 39). She also testified that she went shopping on occasion and went to the bar with her boyfriend. (Tr. 40). Hennebaul stated that she had memory problems and problems paying attention. (Tr. 47-48). The ALJ ultimately found that Hennebaul's statements

were not consistent with the medical evidence of record that showed mildly impaired attention and concentration. (Tr. 21-25).

Having arrived at this RFC assessment, the ALJ found at Step 4 that Hennebaul could not perform her past relevant work. (Tr. 26-27). The ALJ then made a finding at Step 5 that Hennebaul could perform work available in the national economy as a video monitor, a document preparer, and a final assembler. (Tr. 27). Accordingly, the ALJ concluded that Hennebaul did not meet the stringent standard for disability set by the Act and denied her claim. (Tr. 28).

This appeal followed. (Doc. 1). On appeal, Hennebaul contends that the ALJ failed to consider her mild limitations in concentrating, persisting, and maintaining pace when crafting the RFC and limiting Hennebaul to unskilled work. Hennebaul also asserts a separation of powers argument, asserting that the Commissioner of Social Security was not constitutionally appointed. This case is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

## III.   <u>Discussion</u>

### A.   <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the

findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

10

The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal

11

matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In Hess, the court of appeals considered the question of whether an RFC, which limited a claimant to simple tasks, adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that, "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ

13

offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . . " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC, the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

### B.   Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a).  To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous

14

work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe

impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a

physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if

17

it is supported by substantial evidence. <u>Burns v. Barnhart</u>, 312 F.3d 113, 129 (3d Cir. 2002); <u>see also Metzger v. Berryhill,</u> No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), <u>report and recommendation adopted sub nom. Metzgar v. Colvin</u>, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); <u>Rathbun v. Berryhill</u>, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), <u>report and recommendation adopted</u>, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. <u>Mason</u>, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); <u>Mason</u>, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory

explication of the basis on which it rests." <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. <u>Id.</u> at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 433 (3d Cir. 1999).

## C.   <u>Simple Tasks RFC Analysis</u>

In <u>Hess v. Comm'r Soc. Sec.</u>, 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals addressed the question of whether an RFC which limited a claimant to simple tasks adequately addressed moderate limitations on concentration, persistence, and pace. In terms that are equally applicable here, the Court noted that "[t]he relationship between 'simple tasks' limitations and 'concentration, persistence, or pace' is a close one." <u>Id.</u> Given how closely related these two concepts are, the appellate court rejected the notion advanced by the plaintiff that an RFC which limited a claimant to simple tasks failed as a matter of law to address moderate limitations on concentration, persistence, and pace. Instead, the Court concluded that:

> A limitation to "simple tasks" is fundamentally the same as one "to jobs requiring understanding, remembering, and carrying out only simple instructions and making only simple work-related decisions[.]" (App. at 33-34;) <u>see</u> <u>Davis v. Berryhill</u>, 743 F. App'x 846, 850 (9th Cir. 2018)

19

(treating "understanding, remembering, and carrying out only simple
instructions" as equivalent to "simple tasks"); Richards v. Colvin, 640
F. App'x 786, 790 (10th Cir. 2016) (referring to a limitation "to
understanding, remembering, and carrying out only simple instructions
and making only simple work-related decisions" as a "simple-work
limitation[ ]"). Indeed, both formulations — the ALJ's and the more
concise phrase "simple tasks" — relate to mental abilities necessary to
perform "unskilled work." See 20 C.F.R. §§ 404.1568(a), 416.968(a)
("Unskilled work is work which needs little or no judgment to do
simple duties that can be learned on the job in a short period of time.");
SSR 96-9P, 1996 WL 374185, at *9 (July 2, 1996) (concluding that
"unskilled work" requires "[u]nderstanding, remembering, and
carrying out simple instructions" and "[m]aking ... simple work-related
decisions"); cf. Richards, 640 F. App'x at 790 (treating "simple-work
limitations" as similar to "unskilled work" limitations). So the parties'
reliance on case law related to "simple tasks" is appropriate and helpful.

Hess, 931 F.3d at 210–11.

Having rejected a *per se* rule finding that simple task RFCs are legally

inadequate to address moderate limitations in concentration, persistence, and pace,

the Court of Appeals found that, in this setting, the issue was one of adequate

articulation of the ALJ's rationale, holding that "as long as the ALJ offers a 'valid

explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant

has 'moderate' difficulties in 'concentration, persistence, or pace.' " Id. at 211. On

this score, the appellate court indicated that an ALJ offers a valid explanation for a

simple task RFC when the ALJ highlights factors such as "mental status

examinations and reports that revealed that [the claimant] could function effectively;

opinion evidence showing that [the claimant] could do simple work; and [the

claimant]'s activities of daily living, which demonstrated that [s]he is capable of engaging in a diverse array of 'simple tasks[.]'" Id. at 214.

### D.   The ALJ's Decision is Supported by Substantial Evidence.

In this setting, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Judged against these deferential standards of review, we find that substantial evidence supported the decision by the ALJ that Hennebaul was not disabled. Therefore, we will affirm this decision.

Hennebaul asserts one alleged claim of error in the ALJ's decision, arguing that the ALJ's RFC assessment did not adequately take into account her mild limitations in concentration, persistence, and pace when the ALJ limited her to unskilled work. She contends that the ALJ found only mild limitations in this area but failed to account for her inability to stay on task. Additionally, she contends that

the ALJ's finding is contrary to the persuasiveness he afforded to the medical opinion evidence, which Hennebaul claims supports her limitations in this area.

The ALJ found that Hennebaul had only mild limitations in concentration, persistence, and pace, noting that while Hennebaul complained of her inability to stay on task and pay attention, the medical evidence and her activities of daily living did not support greater than mild limitations in this area. On this score, the ALJ recounted the medical evidence during the relevant period, which revealed that Hennebaul's concentration and attention were only mildly impaired. The ALJ also discussed Hennebaul's activities of daily living per her own testimony, including taking care of her personal needs, performing household chores, driving, and handling her finances.

The ALJ further discussed the medical opinion evidence supporting only a mild limitation in this area, including the opinions of Dr. Coons, Dr. Malik, Dr. Small, and Dr. Taren. The ALJ noted that Dr. Coons' examination corroborated Hennebaul's complaints regarding the existence of deficits with attention and concentration but indicated that they were only mild in degree. While the ALJ found Dr. Malik's opinion generally somewhat persuasive, she noted that Dr. Malik's opinion that Hennebaul had a frequent inability to concentrate did not include an indication as to the degree or severity of such an impairment. Dr. Small found only

22

a mild limitation in concentration, persistence, and pace, as did Dr. Taren. In discussing that she found these opinions persuasive, the ALJ noted that these findings were consistent with the medical records which showed only mild limitations, and these opinions and medical evidence supported a limitation to unskilled, low stress work.

We find that this decision is supported by substantial evidence. Indeed, the ALJ was faced with several medical opinions, most of which found only mild limitations in concentrating, persisting, and maintaining pace. Because of these limitations, the ALJ limited Hennebaul to unskilled, low stress work, and articulated her reasoning for such a limitation—that this limitation was supported by the medical opinions and evidence, as well has Hennebaul's reported activities of daily living. The limitation to unskilled, low stress work has consistently been upheld where an ALJ has found even moderate limitations the area of concentrating, persisting, and maintaining pace. See e.g., Hess, 931 F.3d at 212; Heisey v. Saul, 2020 WL 6870738, at *11 (E.D. Pa. Nov. 23, 2020) (finding that "the ALJ's limitation to unskilled work was more than necessary to account for a mild limitation in concentration, persistence, and pace"); Bonner v Saul, 2020 WL 4041052, at *16 (M.D. Pa. July 17, 2020) (finding a limitation to unskilled work and simple, routine tasks sufficient to account for moderate limitations in concentration, persistence, and

pace). Thus, we find that the ALJ's limitation to unskilled, low stress work in this case adequately accounted for Hennebaul's mild limitation in concentration, persistence, and pace.

To the extent that the plaintiff contends this RFC determination, as well as the hypothetical to the vocational expert, did not account for Hennebaul's inability to stay on task, no such finding was made by the ALJ in this case. On this score, it is well settled that an ALJ's questions to a vocational expert need only include the credibly established limitations of the claimant. See Rutherford, 399 F.3d at 554. Indeed, while the ALJ recognized that Hennebaul alleged she was unable to stay on task, and further recognized that she had some difficulty concentrating and paying attention, the ALJ found that the medical evidence did not support the claimant's limitations to the extent she alleged. The ALJ cited to the medical records which contained largely normal mental status examination findings throughout the relevant period and only supported mild limitations in attention and concentration. While the plaintiff asserts that the ALJ found this limitation to be credibly established, this assertion mischaracterizes the ALJ's findings that we have noted above; namely, that the ALJ recognized some difficulties concentrating and paying attention, but that the record supported only a mild limitation in concentrating, persisting, and maintaining pace. Accordingly, we find no error in the ALJ's decision here.

24

In closing, the ALJ's assessment of the evidence in this case complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.' " Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case.

### E.   Separation of Powers

Finally, the plaintiff contends that the ALJ's authority was constitutionally defective, in that the ALJ derives his power from the Commissioner of Social Security, and the Commissioner of Social Security was not constitutionally appointed because the removal clause violates the separation of powers. The parties agree that the removal clause violates the separation of powers to the extent it limits the President's authority to remove the Commissioner, but the Commissioner

contends that this is not a basis for setting aside an unfavorable decision denying benefits. After consideration, we agree with the rising tide of caselaw suggesting that there is no reversible error where the plaintiff has not shown a traceable injury linked to the unconstitutional removal clause. Accordingly, this argument is not a basis for a remand in this case.

The plaintiff contends that she was not afforded a valid administrative adjudicatory process because her claim was denied by an ALJ who was appointed by a Commissioner whose appointment was constitutionally defective. The plaintiff relies on the Supreme Court's decision in Seila Law LLC v. CFPB, 140 S. Ct. 2183 (2020). In Seila Law, the Supreme Court found that the Consumer Financial Protection Bureau's removal structure violated the separation of powers, as that structure essentially insulated the director of the CFPB from removal by the President. Id. at 2197. Moreover, in Collins v. Yellen, 141 S. Ct. 1761 (2021), the Supreme Court held a removal provision which allowed for the President to remove the director of the Federal Housing Finance Agency only for cause violated the separation of powers. Id. at 1783.

The Third Circuit has not addressed whether these Supreme Court decisions are applicable to the Social Security Administration. However, the SSA limits the removal of the Commissioner only for cause. See 42 U.S.C. § 902(a)(3) ("An

individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office"). Moreover, at least one court within this circuit has found that the removal provision for the Commissioner of the SSA violates the separation of powers. See Stamm v. Kijakazi, -- F.Supp.3d --, 2021 WL 6197749, at *5 (M.D. Pa. Dec. 31, 2021) (Mehalchick, M.J.) ("Applying the holdings in Seila Law and Collins here makes it clear that the provision for removal of the Commissioner of Social Security, 42 U.S.C. § 902(a)(3), violates the separation of powers").

Yet while the structure of the Social Security Act's retention provisions may foster some separation of powers concerns, what is less apparent is how those concerns provide Hennebaul with grounds to set aside this ALJ's decision. In this regard, other courts have taken the Collins approach and held that Social Security plaintiffs typically do not have standing to challenge the separation of powers violation, as these plaintiffs could not show that the removal clause caused them a traceable injury. Indeed, in Collins, the Supreme Court found that "whenever a separation-of-powers violation occurs, any aggrieved party *with standing* my file a constitutional challenge." Collins, 141 S. Ct. at 1780 (emphasis added). As applied to Social Security plaintiffs, one court has aptly explained:

> In Collins, the Directors of the FHFA adopted an amendment (the "Third Amendment") to certain financial agreements that "materially

changed the nature of the agreements" and resulted in the companies in which plaintiffs were shareholders transferring to the U.S. Treasury "at least $124 billion dollars more than the companies would have had to pay" under the prior form of the agreements. Id. at 1774. The plaintiffs in Collins thus had an identifiable basis to contend that but for the unconstitutional removal provision, the President may have removed and appointed a different Director who would have disapproved of the adoption (or implementation) of the Third Amendment. See id. at 1789.

In contrast, there is nothing showing the Commissioner or the SSA implemented new and relevant agency action that may have turned upon the President's inability to remove the Commissioner. Plaintiff has not identified any new regulations, agency policies or directives Commissioner Saul installed that may have affected her claims. Plaintiff thus fails to show how or why § 902(a)(3) removal clause possibly harmed her.

Wicker v. Kijakazi, 2022 WL 267896, at *10 (E.D. Pa. Jan. 28, 2022) (quoting Lisa Y. v. Comm'r of Soc. Sec., -- F.Supp.3d --, 2021 WL 5177363, at *7 (W.D. Wash. Nov. 8, 2021)).

Thus, following Collins, many courts in this circuit have found that Social Security plaintiffs do not have standing to make a separation of powers challenge because they cannot show a nexus between the unconstitutional removal provision and some compensable harm. See e.g., Jones v. Kijakazi, 2022 WL 1016610, at *12 (D. Del. April 5, 2022) ("Plaintiff does not articulate how the President's inability to remove the Commissioner without cause affected the ALJ's disability determination in this case") Adams v. Kijakazi, 2022 WL 767806, at * 11 (E.D. Pa. Mar. 14, 2022)

28

("Plaintiff has failed to establish any nexus between the removal restriction and the denial of her application for benefits"); Kowalski v. Kijakazi, 2022 WL 526094, at *11 (M.D. Pa. Feb. 22, 2022) (Mehalchick, M.J.) ("There is no allegation suggesting a direct nexus between the adjudication of Kowalski's disability claim by the ALJ and the alleged separation of powers violation in the removal statute that applies to the Commissioner").

In the instant case, the plaintiff simply contends that she was not afforded a valid administrative adjudicatory process because the removal structure for the Commissioner of SSA is unconstitutional. However, as this recent caselaw illustrates, much more is needed than a generalized assertion that the unconstitutionality of the removal clause requires a remand. Rather, the plaintiff must show that the removal structure itself caused her harm. On this score, Hennebaul's argument asserts that President Biden would have removed Commissioner Andrew Saul earlier but for the unconstitutional removal provision, and that this provides an adequate nexus between the ALJ's decision in her case and the unconstitutional removal provision. However, as one court in this circuit has recently noted, such an argument does not demonstrate the requisite harm:

> Plaintiff's best argument for "an adequate nexus between the unconstitutional provision and the action at issue," Mor, 2022 WL 73510, at *5, is that, but for the removal-restriction provision, President Biden would have removed Commissioner Saul from that office prior

to February 10, 2021, when the Appeals Council denied her request for review. Plaintiff submits that a White House official's statement concerning Commissioner Saul's termination later that year (July 9, 2021) shows that President Biden's early intent to install a new Commissioner was frustrated by the removal-restriction provision. The statement criticized Commissioner Saul for "undermin[ing] and politiciz[ing] Social Security disability benefits" since the beginning of his term in 2019. *Biden fires Saul as SSA commissioner*, FEDERAL NEWS NETWORK (9 July 2021), https://federalnewsnetwork.com/people/2021/07/biden-fires-saul-as-ssa-commissioner/. Based on this and other indicia of President Biden's displeasure with Commissioner Saul, Plaintiff argues that the President "would have fired [him] immediately upon taking office had he believed it was legal at the time" and that he "only refrained from removing Mr. Saul because of the removal restriction" at issue. (Doc. No. 18, pg. 10).

Though it is plausible that President Biden would have sought to remove Commissioner Saul earlier if not for the removal-restriction provision, that possibility does not adequately demonstrate compensable harm in this case. The members of the Appeals Council were validly appointed and duly authorized to fulfill their official duties, and there is no evidence that Commissioner Saul influenced the Appeals Council's denial of Plaintiff's request for review. That is, the Court has no reason to believe that Commissioner Saul used authority he only continued to possess due to the unconstitutional removal-restriction provision to affect the outcome of Plaintiff's request for review. Nor is there any evidence that the President was personally concerned with the outcome of Plaintiff's case such that his ability to effect a change in leadership at the head of the SSA would have affected the outcome of the matter. See Collins, 141 S. Ct. at 1802 (Kagan, J., concurring).

Put another way, Plaintiff has not explained to the Court how the adjudication or outcome of her case would have been different if only Acting Commissioner Kijakazi had been installed earlier. Plaintiff points to no changes in the regulations, updated guidance, or personnel changes instituted by the Acting Commissioner that would have inured

to her benefit. Without such a showing, Plaintiff's argument is—
essentially—that though she has no apparent need of being made whole,
she would nevertheless like a second administrative determination of
her disability. As Justice Kagan pointed out in her concurrence in
Collins, "usual remedial principles" counsel against "put[ting] ...
plaintiffs 'in a better position' than if no constitutional violation had
occurred" at all. <u>Id.</u> at 1801. Accordingly, the Court finds that the
constitutional defect in Section 902(a)(3) does not warrant remand of
this matter for fresh administrative proceedings.

<u>Candusso v. Kijakazi</u>, -- F.Supp.3d – 2022 WL 3447306, at *5 (W.D. Pa. Aug. 17, 2022) (footnotes omitted).

In the instant case, Hennebaul makes identical arguments, asserting that "the facts are unmistakably clear that President Biden wished to terminate Commissioner Saul immediately upon assuming the Presidency." (Doc. 19, at 6). However, we find the <u>Candusso</u> court's reasoning persuasive and conclude that the plaintiff has not shown the requisite harm to prevail on this separation of powers claim. Indeed, as in that case, the plaintiff here does not point to any changes in the regulations or updated guidance that would have benefitted her had Acting Commissioner Kijakazi been appointed earlier, and thus, cannot establish any compensable harm. Accordingly, we find that the unconstitutional removal provision does not warrant a remand of this case.

**IV.**   **<u>Conclusion</u>**

Accordingly, for the foregoing reasons, the final decision of the Commissioner denying these claims will be AFFIRMED.

An appropriate order follows.

Submitted this 21st day of November 2022.


<u>*s/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge
